IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHERYL KLAVER,

       Plaintiff,

v.                                                                               No. 1:23-cv-815 MIS/KRS

VIAJES Y YATES, LLC.

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Plaintiff's Motion for Default Judgment, (Doc. 13). The presiding judge referred the Motion for Default Judgment to the undersigned for an evidentiary hearing and to prepare a Proposed Findings and Recommended Disposition on the Motion and the issue of damages. (Doc. 19). The Court held an evidentiary hearing on May 30, 2024 via Zoom videoconference, at which Plaintiff and Plaintiff's counsel appeared and Plaintiff testified. *See* (Doc. 24) (Clerk's Minutes); (Doc. 25) (Transcript).[1] The exhibits that Plaintiff proffered (Exhibits A-J) were entered into the record. Having considered Plaintiff's Motion for

---

[1] Plaintiff withdrew her jury demand for the purpose of entry of default judgment. *See* (Doc. 21). While Defendant would have been entitled to a jury trial on the merits of Plaintiff's legal claims (*see* Fed. R. Civ. P. 38), the Tenth Circuit has held that "Defendants do not have a constitutional right to a jury trial following entry of default." *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (citing *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l., Inc.*, 982 F.2d 686, 692 (1st Cir.1993) ("Following the entry of default under Fed.R.Civ.P. 37(b)(2), a party does not have a right to a jury trial under either Fed.R.Civ.P. 55(b)(2) or the Seventh Amendment."); *Dierschke v. O'Cheskey,* 975 F.2d 181, 185 (5th Cir.1992) ("[I]n a default case neither the plaintiff nor the defendant has a constitutional right to a jury trial on the issue of damages.")); *see also Sells v. Berry*, 24 Fed. Appx. 568, 571-72 (7th Cir. 2001) (holding that non-appearing defaulted defendant was not entitled to jury trial on issue of damages or liability); 10A Charles Alan Wright, et al., Fed. Practice & Procedure § 2688 (4th ed. 2023) (collecting cases holding that following default, "neither side has a right to a jury trial on damages"); 8 Moore's Federal Practice - Civil § 38.34 (2023) ("[T]he courts have held that there is no constitutional right to jury trial on the assessment of damages after a default.").

Default Judgment, Plaintiff's testimony and statements made by Plaintiff's counsel at the May 30, 2024 evidentiary hearing, the record of the case, and relevant law, the Court recommends that Plaintiff's Motion for Default Judgment, (Doc. 13), be GRANTED and Plaintiff be awarded a total of $189,256.07 in damages as set forth below.

I.   **Background**

Plaintiff brings claims for negligence and gross negligence against Defendant for injuries suffered on August 9, 2023 in Cartagena, Colombia, on a boat owned by Defendant. (Doc. 1) at 2.[2] Due to overcrowding on the boat, Plaintiff had to sit on a bench without back support and was thrown from her seat when the boat, moving at a fast rate of speed, hit a wave and launched into the air. *Id.* Plaintiff suffered injuries to her back and knee, had to stay in a hospital in Colombia for nine days, and was then flown to a hospital in Florida. *Id.* at 3. Plaintiff had a compression fracture at the L-1 vertebrae and a bone fragment protruding near the neural canal. *Id.* The injuries and pain continue to impact Plaintiff on a daily basis, such as in her ability to drive, move around, and exercise. *See* (Doc. 25) at 11-25. In her Complaint, Plaintiff alleges that "Defendant's acts and omissions constitute negligence per se in that the operator/Captain of the boat, [who] was under Defendant's control, supervision and/or entrustment, failed to exercise ordinary care in operating the Vessel, which caused Ms. Klaver to be violently thrown out of her seat and suffer serious injuries." (Doc. 1) at 4. Plaintiff also alleges that "Defendant's acts and omissions constitute gross negligence in that the driver of the Vessel under Defendant's control, supervision and/or entrustment was reckless in failing to exercise ordinary care in operating the

---

[2] In reviewing a motion for default judgment, the Court should accept all factual allegations in the Complaint as true, except those pertaining to the amount of damages. *Archer v. Eiland*, 64 Fed. Appx. 676, 679 (10th Cir. 2003) (unpublished).

Vessel." *Id.* Plaintiff alleges she has incurred or will incur the following damages: (1) past and future physical pain, mental anguish, physical impairment, and disfigurement; (2) past and future loss of earning capacity; and (3) charges for past and future medical treatment. *Id.* at 4-5.

Plaintiff filed this lawsuit on September 21, 2023, and served Defendant's registered agent on September 26, 2023. (Docs. 1 and 2). Defendant has not appeared in this case or answered Plaintiff's Complaint, and its deadline to do so was October 17, 2023. Plaintiff also mailed a letter to Defendant's registered agent on November 8, 2023 notifying it that Defendant's Answer was overdue, and on January 29, 2024 she mailed an additional notice to Defendant's registered agent and to Defendant's member, Jairo Andres Portillo Tovar, at Defendant's principal place of business. (Docs. 8-1, 8-2). Defendant's registered agent responded to an email from Plaintiff's counsel on January 30, 2024 acknowledging receipt of both Notices. (Doc. 8-3). On March 7, 2024, Plaintiff sought entry of default, and the Clerk of the Court entered default on March 8, 2024. (Docs. 10, 11). Plaintiff now seeks a default judgment under Fed. R. Civ. P. 55(b)(2) against Defendant for economic damages in the amount of $19,240.07, and noneconomic damages, including pain and suffering, mental anguish, and physical impairment damages. (Doc. 13).

**II.     Legal Standard**

Federal Rule of Civil Procedure 55 "mandates a two-step process for a party who seeks a default judgment in his favor." *William v. Smithson*, 57 F.3d 1081 (10th Cir. 1995). First, the party must obtain a Clerk's entry of default. Fed. R. Civ. P. 55(a); *see also Watkins v. Donnelly*, 551 Fed. Appx. 953, 958 (10th Cir. 2014) (unpublished) ("Entry of default by the clerk is a necessary prerequisite that must be performed before a district court is permitted to issue a

default judgment."). After obtaining a Clerk's entry of default, the party may move the Clerk to enter a default judgment if the claim is for a "sum certain," but "in all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(1)-(2).

In considering whether to grant a motion for default judgment, a court should first determine: (1) whether it has subject matter jurisdiction over the dispute; and (2) whether it has personal jurisdiction over the defaulting party by determining whether the party against whom a default judgment is sought has been properly served in accordance with the Federal Rules of Civil Procedure and subsequently failed to answer, defend, or otherwise appear in the case within the time provided by the Rules. *See Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010) ("Personal jurisdiction over the defendant is required before a default judgment in a civil case may be entered.") (citation omitted); *Dennis Garberg & Assoc., Inc. v. Pack-Tech Intern. Corp.*, 115 F.3d 767, 771-72 (10th Cir. 1997) ("[J]udgment by default should not be entered without a determination that the court has jurisdiction over the defendant[; t]hus, when entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.").

In reviewing a motion for default judgment, courts should accept all factual allegations in the Complaint as true, except those pertaining to the amount of damages. *Archer*, 64 Fed. Appx. at 679. However, courts must also determine "whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *Bixler*, 596 F.3d at 762. Courts disfavor default judgments, and instead prefer to adjudicate cases on their merits. *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990). As such, default judgment must be "viewed as available only when the adversary process has been

halted because of an essentially unresponsive party." *Cessna Fin. Corp. v. Bielenberg Masonry Contracting Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983).  The decision whether to enter a default judgment is ultimately at the court's discretion.  *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997).

### III. Discussion

#### A. Jurisdiction

Plaintiff has met the first step of Rule 55 by obtaining a Clerk's Entry of Default after Defendant failed to appear and respond to the Complaint.  *See* (Docs. 10, 11) (Plaintiff's Motion for Entry of Default and Clerk's Entry of Default).  Plaintiff now requests default judgment under Rule 55(b)(2).  The Court has diversity subject matter jurisdiction under 28 U.S.C. § 1332(a), which provides that federal courts have "original jurisdiction in all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States."  Plaintiff alleges the amount in controversy exceeds $75,000, and diversity of citizenship exists because Plaintiff lives in New York and Defendant is an LLC with one member who is a citizen of New Mexico.  *See* (Doc. 1) at 1-2; *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1237-38 (10th Cir. 2015) (explaining citizenship of an LLC is determined not by its state of organization or principal place of business, but by the citizenship of all of its members).  The Court also has personal jurisdiction over Defendant because its state of organization is New Mexico and the presiding judge has found that Defendant was properly served.  *See* (Doc. 19) ("Upon review of [Doc. 18] Plaintiff's Supplement to Motion for Entry of Default Judgment and Request for Evidentiary Hearing, the Court is satisfied that Defendant was properly served.";

5

https://portal.sos.state.nm.us/BFS/online/corporationbusinesssearch (site last visited June 14, 2024) (showing Defendant is organized in New Mexico); *Avus Designs, Inc. v. Grezxx, LLC*, 644 F. Supp. 3d 963, 978 (D. Wyo. 2022) ("The Court therefore holds an LLC is 'at home' in its state of organization, and is therefore subject to general personal jurisdiction within that state consistent with the Due Process Clause.") (citing *Daimler AG v. Bauman*, 571 U.S. 117, 139, (2014)).

### B. Sufficiency of Complaint

Next, the Court finds that Plaintiff's Complaint states a legitimate cause of action. Plaintiff brings claims for negligence and gross negligence. (Doc. 1) at 4. Generally, a negligence claim "requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based on a standard of reasonable care, and the breach being a cause-in-fact and proximate cause of the plaintiff's damages." *See Coffey v. United States*, 870 F. Supp. 2d 1202, 1225 (D.N.M. 2012); *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 73 P.3d 181, 185-86. Under New Mexico law, proof of gross negligence requires the plaintiff to plead and prove negligence's elements, and that the Defendant committed "an act or omission ... with conscious indifference to harmful consequences," and failed "to exercise even slight care." *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1251 (10th Cir. 2000); *Paiz v. State Farm Fire & Cas. Co.*, 1994-NMSC-979, ¶ 29, 880 P.2d 300. With respect to duty, the Supreme Court of New Mexico has "formally abolished the distinction between ordinary and gross negligence" because "the concept of gross negligence" is "so nebulous" as to have "no generally accepted meaning." *Paiz*, 1994-NMSC-079, ¶ 29; *see also Govich v. N. Am. Sys.*, 1991-NMSC-061, ¶ 9,

814 P.2d 94 ("[T]he standard in all cases has been ordinary care under the circumstances.") (citation omitted).

Plaintiff alleges in her Complaint that "the operator/Captain of the boat, [who] was under Defendant's control, supervision and/or entrustment, failed to exercise ordinary care in operating the Vessel, which caused Ms. Klaver to be violently thrown out of her seat and suffer serious injuries," and that "the driver of the Vessel under Defendant's control, supervision and/or entrustment was reckless in failing to exercise ordinary care in operating the Vessel." (Doc. 1) at 4. Plaintiff's Complaint contains numerous factual allegations that Defendant owed Plaintiff a duty of reasonable care and breached that duty, and the breach was a cause-in-fact and proximate cause of Plaintiff's damages. *See id.* at 2-3. The Court further finds sufficient allegations in the Complaint that Defendant not only behaved negligently, but behaved with "conscious indifference to harmful consequences" and failed "to exercise even slight care." Accordingly, the Court finds the Complaint states a legitimate cause of action.

### C. Damages

Finally, the Court considers the issue of damages. "[D]efault judgment may not be entered until the amount of damages has been ascertained." *Reg. Dist. Council v. Mile High Rodbusters, Inc.*, 82 F. Supp. 3d 1235, 1243 (D. Colo. 2015) (citing *Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984)). "The calculation of damages requires the Court to look beyond the averments of the complaint. The Court is required to examine the sufficiency of all evidence with respect to damages, and, when evidence is deemed insufficient, to ascertain the appropriate level of damages through its own inquiry." *Begay v. Rangel*, 2006 WL 8444385, *2

(D.N.M.) (unpublished).  Further, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

Plaintiff has submitted proof of incurred medical expenses and related costs resulting from the incident in the amount of $4,063.11, and future medical expenses in the amount of $15,176.96, for a total of $19,240.07 for medical expenses.  *See* (Doc. 13-1).  In addition, Plaintiff testified that she incurred lost wages from using thirteen sick days for medical reasons relating to her injuries, which she valued at approximately $492 per day based on her gross salary, for a total of $6,396.00.  *See* (Doc. 25) at 26-30; 34-35.  Plaintiff also lost income from her job as a tutor due to her injuries and medical appointments, and approximates $7,020.00 in lost income from tutoring.  *Id.* at 30-33.  Finally, Plaintiff testified about her pain and suffering during and after the incident, her experience in the hospital in Colombia for nine days and being transported to Florida while still injured, her ongoing pain, and the impact from her injuries on her day-to-day activities, job, and enjoyment of life.  Plaintiff's counsel categorized these damages as follows: (1) past and future pain and suffering, or mental anguish; (2) past and future loss of enjoyment of life; and (3) past and future disability or impairment.  *Id.* at 35.  He estimated Plaintiff's past damages, calculated at a minimum-wage value of $7.25/hour for 300 days since the accident, to total $52,200.  *Id.*  For future damages, Plaintiff's counsel estimated that using the same minimum-wage value for two years into the future, the amount is $104,400 in future damages.  *Id.* at 35-36.

The Court finds that the record of the case and Plaintiff's testimony is sufficient to award Plaintiff damages in the amounts set forth above.  Plaintiff testified she was severely injured and suffered from physical pain and emotional distress due to her injury and Defendant's lack of

8

care. *See id.* at 11-19.  Plaintiff's injuries require her to go to physical therapy, regularly visit a chiropractor, and see a pain management specialist. *Id.* at 19-20.  She continues to have painful muscle spasms, she is unable to stand up straight or carry a book bag up stairs, and has lost physical strength she used to have. *Id.* at 21-22.  She has also been told she will have arthritis in her knee and may need surgery for the compression fracture in her spine. *Id.* at 24-25.  The Court finds the requested amounts reasonable and sufficiently supported by the record.  Therefore, the Court recommends that Plaintiff be awarded damages in the amounts set forth above.

### IV. Conclusion

For the reasons stated above, the Court finds that it has subject matter jurisdiction over this action and personal jurisdiction over Defendant.  The Court further finds that the well-pleaded facts in the Complaint support Plaintiff's claims for negligence and gross negligence.  Finally, the Court finds sufficient evidence to award Plaintiff damages for past and future medical expenses, lost income, and past and future pain and suffering, in the amounts set forth above.  Accordingly, the Court RECOMMENDS that Plaintiff's Motion for Default Judgment, (Doc. 13), be GRANTED, and that Plaintiff be awarded damages in the following amounts:

1. $19,240.07 for past and future medical damages;
2. $13,416.00 for lost income/wages;
3. $52,200.00 for past pain and suffering; and
4. $104,400.00 for future pain and suffering.

For a total amount of **$189,256.07**.

The Court directs Plaintiff's counsel to serve a copy of these Proposed Findings and Recommended Disposition on Defendant's registered agent (to their current address), and on Defendant's member, Jairo Andres Portillo Tovar, at Defendant's principal place of business.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN (14) DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the United States District Court for the District of New Mexico pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen (14) day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**